GILLIAN L. WADE (SBN 229124)
gwade@milsteinadelman.com
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Facsimile: (310) 396-9635

HANK BATES, (SBN 167688)
hbates@carneywilliams.com
ALLEN CARNEY
acarney@cbplaw.com
DAVID F. SLADE
dslade@cbplaw.com
CARNEY BATES & PULLIAM PLLC
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

BRIAN T. KU
brian@kumussman.com
LOUIS I. MUSSMAN
louis@kumussman.com
M. RYAN CASEY
ryan@kumussman.com
KU & MUSSMAN, P.A.
12550 Biscayne Blvd., Suite 406
Miami, Florida 33181
Telephone: (305) 891-1322
Facsimile: (305) 891-4512

Attorneys for Plaintiffs
TOYER GREAR and JOYCELYN HARRIS,
individually and on behalf of others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TOYER GREAR and JOYCELYN HARRIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION, a Pennsylvania Corporation,<br><br>Defendant. | Case No. 3:14-cv-05333-JSW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: March 13, 2015<br>Time: 9:00 a.m.<br>Dept.: Crtrm. 5 (1301 Clay St, Oakland, CA)<br>Judge: Hon. Jeffrey S. White<br><br>Complaint Filed December 4, 2014 |

## I. INTRODUCTION

Plaintiffs, Toyer Grear and Jocelyn Harris ("Plaintiffs"), by and through undersigned counsel, respectfully submit this memorandum in opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings, Dkt. No. 22 ("Def. Br."). As noted herein, Defendant completely ignores an express provision of the arbitration clause which *excludes* from arbitration 'any dispute related to or arising from allegations associated with unauthorized use or receipt of service.' All claims in Plaintiffs' Complaint arise from Comcast's and third parties' unauthorized use of its residential customers' wireless routers, which fact Comcast readily concedes by acknowledging "Plaintiffs' claims may be statutory, but at their core, they arise from what Plaintiffs assert is Comcast's failure to obtain authorization from its customers to broadcast the HHS." Def. Br. at 12. Accordingly, by the express terms of the contract, this dispute is not subject to arbitration, and Defendant's Motion should be denied in its entirety.[1]

## II. BACKGROUND AND RELEVANT FACTS / ALLEGATIONS

### A. Factual Background

As smartphone and tablet technology improves, consumer demand for ways to connect such devices to the internet grows. For years, consumers have relied on their mobile phone carriers to provide access to the internet and data services from any location. Now, in an effort to compete with the mobile carriers, Comcast seeks to establish a national "Wi-Fi" network. Plaintiffs' Class Action Complaint, Dkt. No. 1 ("Compl.") at ¶¶ 12-13.

Unlike the mobile carriers, Comcast does not seek to establish national coverage through a series of communication towers erected at the carrier's expense. Rather, Comcast seeks to externalize such costs onto its internet customers, by converting their individual wireless routers into a national public network. In the past few years, Comcast quietly began leasing wireless routers to its customers that, in addition to the private network for the customer, began broadcasting a public "xfinity Wi-Fi" network that any premium Comcast customer could access.

---

[1] Pursuant to this Court's Civil Standing Order No. 10, a Proposed Order denying Defendant's Motion to Compel Arbitration and Stay Proceedings is filed concurrently herewith.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS     1     CASE NO. 3:14-CV-05333

1    Thus, both Comcast and third-parties use the internet services purchased by unsuspecting
2    customers, such as Plaintiffs and the Class. *Id.* at ¶¶ 14-15, 17.

3    Importantly, Comcast does not obtain authorization from its customers to share their
4    internet services with the public at large.[2] Nor does Comcast require those seeking to log onto a
5    customer's network to get authorization from the customer. Comcast's agreement with its
6    residential customers (the Comcast Agreement for Residential Services or "RSA") makes only
7    three, oblique references to an "XFINITY Internet WiFi Home Hotspot" or "HHS," in which
8    such cryptic term is undefined and employed in such vague context that Comcast cannot be said
9    to address the practice *at all*, much less adequately enough to have obtained its customers'
10   authorization. *Id.* at ¶¶ 16, 17, 26, 28-37.[3] Further, as noted by Comcast's senior counsel, even
11   these purported "disclosures" are provided "upon initiation of service," implying that they are
12   sent to customers *after* they enter into a binding contract. *See* Declaration of Mary Kane, Dkt.
13   No. 22-2 ("Kane Decl.") at ¶ 3.

14   Comcast's unauthorized use of its customers' internet service is hardly victimless. For
15   one, Comcast is externalizing its electricity costs onto its customers, as the routers consume more
16   energy when they broadcast the second signal (regardless of whether the public even connects to
17   it or not). As noted by a marketplace consultant that performed independent tests, "by the time
18   they roll it out to all of their subscribers, Comcast will be pushing tens of millions of dollars per
19   month of the electricity bills needed to run their nationwide public Wi-Fi network onto
20   customers." Further, the extra signal compromises the speed of the customers' Internet access
21   and subjects them to increased security risks. Compl. at ¶ 17-25.

22   Accordingly, Plaintiffs filed suit on December 4, 2014, on behalf of themselves,[4] a

23   _____

24   [2] The *merits* of Plaintiff's 'unauthorized use' claims are irrelevant to the question of
25   whether they should be *arbitrated*. But because Defendant spends considerable time arguing that it does get adequate authorization, Plaintiffs respond to Defendant's characterization of such facts.

26   [3] In contrast, Comcast's agreement with small business owners demonstrates that when it is in Comcast's financial interests, it fully explains the practice and obtains the business
27   customer's authorization. *See* Compl. at ¶¶ 38-41.

28   [4] Plaintiff agrees with Defendant's repeated characterization of *both* Plaintiffs (Harris and

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS — - 2 - — CASE NO. 3:14-CV-05333

national class, and California subclass. Plaintiffs allege violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"), the Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502, *et seq.* ("CCDAFA"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). Compl. at ¶¶ 61-75 (CFAA claim), 76-82 (CCDAFA claim), and 83-89 (UCL claim).

### B. Defendant Is Correct: Plaintiffs' Case Is About Unauthorized Use

At the core of Plaintiffs' case are allegations that neither Comcast (nor the public logging onto the broadcast network) have authorization to use Plaintiffs' internet services. Such 'unauthorized use of services' appears repeatedly throughout Plaintiffs' Complaint, and is critical to all three of Plaintiffs' causes of action. *See* Compl. at ¶¶ 3-5, 16-18, 26, 28-46, 62, 66, 71-73, 81, 85-87.

Defendant wholeheartedly agrees with this characterization of Plaintiffs' case, arguing time and time again that Plaintiffs' claims are all "founded on Comcast's purported failure to obtain customer authorization of permission to broadcast an HHS[.]" Def. Br. at 12. According to Defendant:

> Plaintiffs' claims may be statutory, ***but at their core, they arise from what Plaintiffs assert is Comcast's failure to obtain authorization from its customers*** to broadcast the HHS because the RSA fails to adequately disclose the HHS.

*Id.* (emphasis added).[5] Defendant also points out that *each and every cause of action* under

---

Grear) as Comcast "customers" to which the RSA applies and whom receive "benefits of service provided under the RSA[.]" Def. Br. at 2. *See also id.* at 11 ("because Plaintiff Grear alleges that she utilized and paid for the household's Comcast internet services, [she is subject to the RSA]"); *see also* Declaration of Agatha Hill, Dkt. No. 22-3 ("Hill Decl.") at ¶¶ 4-6 (noting that account is in Harris' name, and payments appear to have been made by credit card in Grear's name).

[5] *See also* Def. Br. at 1 ("Plaintiffs claims that…they did not authorize for [the] equipment to be used to provide Comcast service to others"), 4 ("Plaintiffs claim that…Comcast's wireless routers also broadcast a public HHS without authority"), 4 ("At their core, Plaintiffs' statutory claims challenge the terms of the RSA, including the specific provision therein that users of Comcast service 'authorize' the use of Comcast equipment 'to provide the Service(s) to you and others'"), 4 ("Plaintiffs claim [that the RSA provision] makes the use of the HHS by others unauthorized"), 4 ("Plaintiff dispute that they authorized the use of the HHS"), and 11 (Plaintiff Grear's claims "are based on a purported lack of authorization").

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS - 3 - CASE NO. 3:14-CV-05333

which Plaintiffs bring suit relates to or arises out of Plaintiffs' 'unauthorized use' allegations. *Id.* at 11 (tying CFAA, CCDAFA, and UCL claims to allegations of 'unauthorized use).

### C. The RSA Excludes Disputes Related To Unauthorized Use From Arbitration

The "Binding Arbitration" provision of the RSA defines "Dispute" as "any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast[.]" Compl. (Ex. A) at 39. However, key here is not the broad application of coverage, but the more specific—and express—*exclusions* from coverage.

As noted above, both parties wholeheartedly agree that this lawsuit relates to or arises from allegations associated with unauthorized use or receipt of services. This is critical with respect to Defendant's motion to compel arbitration, as the RSA's arbitration provision states:

> **j. Exclusions from Arbitration.** YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: . . . (3) ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH UNAUTHORIZED USE OR RECEIPT OF SERVICE[.][6]

Compl. (Ex. A) at 40 (emphasis in original).[7]

### III. LAW AND ARGUMENT

Here, by the plain language of the RSA contract, the current dispute is not subject to arbitration. "[A]rbitration is a matter of contract[.]" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014) (quoting *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (quoting *AT & T Mobility LLC v. Concepcion*, 131 S .Ct. 1740, 1745 (2011)). "Once the Court has determined that an arbitration agreement

---

[6] "Services" is defined earlier in the RSA to include "XFINITY Internet service including XFINITY WiFi." Compl. (Ex. A) at 24.

[7] *See also* Kane Decl. at ¶ 6 (RSA "attached to the Complaint in this matter as Exhibit A is the operative version of the [RSA] that governs the contractual relationship between Comcast and its subscribers, including Plaintiffs Harris and Grear").

involves a transaction involving interstate commerce, thereby falling under the [Federal Arbitration Act], the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement." *Okechukwu v. DEM Enterprises, Inc.*, No. 12-3654, 2012 WL 4470537, at *1 (N.D. Cal. Sep. 27, 2012) (White, J.) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *United Computer Systems v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002)).  To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

Here, there is an express provision excluding this dispute from arbitration.  In a section entitled "Exclusions from Arbitration", the RSA specifically provides that "any dispute related to or arising from allegations associated with unauthorized use or receipt of service" will "not be subject to arbitration[.]"  Compl. (Ex. A) at 40.  As noted above, there is no dispute that Plaintiffs' claims are 'related to or arise from' allegations association with unauthorized use of Plaintiffs' internet service, and the Defendant goes to great lengths to characterize Plaintiffs' claims ("at their core") as 'unauthorized use' claims.

Completely ignoring the "Exclusions from Arbitration" provision of the RSA, Defendant spends the entirety of its brief attacking a straw man; namely, Plaintiffs' anticipated argument that Plaintiff Grear is a non-signatory to the RSA.  Plaintiffs make no such argument, and agree that both Plaintiffs Harris and Grear are Comcast "customers" subject to the RSA.  Based on the plain language of the RSA, Plaintiffs' Complaint, and Defendant's characterization of Plaintiff's Complaint, the dispute clearly falls within an express exclusion to arbitration as provided under the contract.

## IV.  CONCLUSION

For the reasons described herein, Defendant's Motion should be denied in its entirety.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS   - 5 -   CASE NO. 3:14-CV-05333

| | |
|---|---|
| | Respectfully submitted, |
| Dated: February 20, 2015 | MILSTEIN ADELMAN, LLP<br>CARNEY BATES & PULLIAM PLLC<br>KU & MUSSMAN, P.A. |
| | By: /s/ Gillian L. Wade |
| | Attorneys for Plaintiffs<br>TOYER GREAR and JOYCELYN HARRIS |

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS — - 6 - — CASE NO. 3:14-CV-05333