MICHAEL J. STORTZ (SBN #139386)
michael.stortz@dbr.com
TRACY S. COMBS (SBN #298664)
tracy.combs@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone:    (415) 591-7500
Facsimile:    (415) 591-7510

Attorneys for Defendant
COMCAST CORPORATION

SEAMUS C. DUFFY (*pro hac vice*)
seamus.duffy@dbr.com
MICHAEL W. McTIGUE JR. (*pro hac vice*)
michael.mctigue@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Telephone:    (215) 988-2700
Facsimile:    (215) 988-2757

*Of Counsel* for Defendant
COMCAST CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| TOYER GREAR and JOYCELYN HARRIS, individually and on behalf of all others similarly[sic] situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION, a Pennsylvania Corporation,<br><br>Defendant. | Case No. 3:14-cv-05333-JSW<br><br>**DEFENDANT COMCAST CORPORATION'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:    March 13, 2015<br>Time:    9:00 a.m.<br>Dept.:   Courtroom 5<br>         1301 Clay Street, 2nd Fl.<br>         Oakland, CA<br>Judge:   Hon. Jeffrey S. White<br><br>Complaint Filed: December 4, 2014 |

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS

CASE NO. 3:14-cv-05333-JSW

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 1

III. CONCLUSION ................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986)..................................................................................................................2

*Chan v. Drexel Burnham Lambert, Inc.*,
 178 Cal. App. 3d 632 (1986)....................................................................................................2

*Falcone Bros. P'ship v. Bear Stearns & Co.*,
 699 F. Supp. 32 (S.D.N.Y. 1988).............................................................................................2

*Ferguson v. Corinthian Colleges, Inc.*,
 733 F.3d 928 (9th Cir. 2013)....................................................................................................2

*Jarecki v. G.D. Searle & Co.*,
 367 U.S. 303 (1961)..................................................................................................................6

*Kristian v. Comcast Corp.*,
 446 F.3d 25 (1st Cir. 2006) ...................................................................................................2, 5

*Minnesota Life Ins. Co. v. Philpot*,
 No. 11-0812 BTM (POR), 2013 WL 100947 (S.D. Cal. Jan. 7, 2013) ....................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985)..................................................................................................................2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)......................................................................................................................2

*Napier v. Preslicka*,
 331 F.3d 1189 (11th Cir. 2003).................................................................................................6

*Parvataneni v. E*Trade Fin. Corp.*,
 967 F. Supp. 2d 1298 (N.D. Cal. 2013) ...................................................................................2

*Rambus Inc. v. Hynix Semiconductor Inc.*,
 Nos. C-05-00334 RMW, C-05-02298 RMW, 2008 WL 2795135 (N.D. Cal.
 July 15, 2008)............................................................................................................................5

*Riffe Assoc., Inc. v. Datron Sys., Inc.*,
 425 F. Supp. 31 (C.D. Cal. 1977) .............................................................................................7

*Sentinel Prods. Corp. v. Scriptoria, N.V.*,
 124 F. Supp. 2d 115 (D. Mass. 2000) ......................................................................................2

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012).................................................................................................4

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960).................................................................................................................2

*Volt Info. Sciences, Inc. v. Trustees of Leland Stanford Jr., Univ.*,
   489 U.S. 468 (1989).................................................................................................................3

**STATUTES, RULES & REGULATIONS**

18 U.S.C. § 1030..........................................................................................................................3, 4

47 U.S.C. § 553.................................................................................................................................6

CAL. BUS. & PROF. CODE § 17200, *et seq.*....................................................................................4

CAL. CIV. CODE § 1641....................................................................................................................6

CAL. PENAL CODE § 502..................................................................................................................4

**OTHER AUTHORITIES**

5 Margaret N. Kniffin, *Corbin on Contracts* § 24.28 (rev. ed. 1998)................................................6

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS — - iii - — CASE NO. 3:14-CV-05333-JSW

# I.

# **INTRODUCTION**

Plaintiffs do not deny that they are both current or former Comcast subscribers, do not deny that they accepted the Agreement for Residential Services ("RSA"),[1] do not deny that the RSA contains a written arbitration agreement, do not deny that both federal and state policy favor such agreements, and do not deny that they chose not to opt out of those agreements. Indeed, their only objection is their belief that this case somehow falls within an exclusion that applies to subscribers' "UNAUTHORIZED USE OR RECEIPT OF SERVICE." Compl., Ex. A at 17, § 13(j).

Their argument fails because Plaintiffs' agreements to arbitrate cover "any dispute, claim or controversy" between the parties and are "to be given the broadest possible meaning that will be enforced." The law is clear that nothing but the most forceful evidence will exclude a claim from arbitration, and that any doubts will be resolved in favor of arbitration. The record is clear that Plaintiffs have presented no evidence to support their argument, much less forceful evidence that would permit such a result. Nor have they identified that their claims are unambiguously excluded from their arbitration agreement. It follows that the Court should stay this action and allow Plaintiffs to pursue their individual claims in arbitration.

# II.

# **ARGUMENT**

In opposing arbitration, Plaintiffs rely entirely on an express exclusion in the RSA that applies to disputes regarding subscribers' "UNAUTHORIZED USE OR RECEIPT OF SERVICE" provided by Comcast. Compl., Ex. A at 17, § 13(j) ("YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: . . . (3)

---

[1] This is a retreat from the allegations of the Complaint, which laid the groundwork for a contract formation argument by alleging that Plaintiff Grear had never accepted the RSA. *See* Compl. ¶ 10 ("Plaintiff Harris is a signatory to the contract for Xfinity Wi-Fi Service for the household; Plaintiff Grear is not a signatory to such contract."). In the face of the evidence presented in Defendant's moving papers, Plaintiffs now admit otherwise. *See, e.g.*, Pls.' Opp. at 2 n.4 ("Plaintiff agrees with Defendant's repeated characterization of both Plaintiffs (Harris and Grear) as Comcast 'customers' to which the RSA applies….").

1 ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH
2 UNAUTHORIZED USE OR RECEIPT OF SERVICE"). They do not provide any evidence to
3 show that this exclusion applies to their claims. Instead, Plaintiffs assert that no such evidence is
4 necessary, because this provision clearly "'exclude[s this] particular grievance from arbitration.'"
5 Pls.' Opp. at 5 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S.
6 574, 585 (1960)).

7 But as the courts have made clear in the fifty-five years since the *United Steelworkers* case, there is a strong presumption in favor of arbitration, such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Parvataneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1301 (N.D. Cal. 2013). In light of this presumption, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

20 Indeed, the presumption is so strong that it even preempts state law that ambiguous contracts can be interpreted against the drafter. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 n.7 (1st Cir. 2006) ("the federal policy favoring arbitration trumps the state contract law tenet. . . ."); *Sentinel Prods. Corp. v. Scriptoria, N.V.*, 124 F. Supp. 2d 115, 119 (D. Mass. 2000) ("the doctrine of *contra proferentem* . . . does not undermine the preference for arbitration when the disagreement concerns a pure scope question."); *Falcone Bros. P'ship v. Bear Stearns & Co.*, 699 F. Supp. 32, 34 (S.D.N.Y. 1988) (same); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 639 (1986) (same).

28 Because of the FAA's presumption in favor of arbitration, Plaintiffs cannot meet their

burden by suggesting or even showing an ambiguity. Instead, they must demonstrate that their claims are unequivocally excluded from the arbitration agreement. *See, e.g., Volt Info. Sciences, Inc. v. Trustees of Leland Stanford Jr., Univ.*, 489 U.S. 468, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"). They have wholly failed to do so, whether the Court considers the terms of the exclusion that Plaintiffs would invoke, their own Complaint, or the RSA that they have acknowledged governs the terms of their relationship with Comcast. We take each in turn.

***First,*** Plaintiffs have not shown that the exclusion is at all applicable or that they would possibly have standing to invoke it. Plaintiffs studiously ignore that they are not internet service providers. Comcast provided the XFINITY Internet. Plaintiffs then used the XFINITY Internet, and do not claim that their use was unauthorized. On its face, the exclusion is not applicable.

***Second***, the gravamen of Plaintiffs' claim is that Comcast allegedly lacked adequate authority to use "***XFINITY Equipment***"—specifically, a wireless router. The factual allegations of the Complaint are replete with that claim, asserted over and over again. *See, e.g.*, Compl. ¶ 3 ("Indeed, without obtaining its customers' authorization for this additional use of their equipment and resources . . . Comcast has externalized the costs of its national network onto its customers."); ¶ 29 ("Comcast does not obtain authorization from its customers to use their routers to generate an Xfinity Wi-Fi Hotspot"); ¶ 42 ("Plaintiffs paid Comcast to lease equipment to connect to the Internet, including a wireless router that was, unbeknownst to Plaintiffs, equipped to broadcast an Xfinity Wi-Fi Hotspot in addition to Plaintiffs' personal, home Wi-Fi hotspot.").

So too are the charging allegations. *See* Compl. ¶ 62 ("Plaintiffs . . . assert violations of [the Computer Fraud and Abuse Act,] 18 U.S.C. § 1030 ["CFAA"] for Comcast's unlawful and unauthorized access of Plaintiffs' and Class members' wireless routers, for purposes of establishing Xfinity Wi-Fi Hotspots . . . ."); ¶¶ 64-65 (asserting that Plaintiffs' wireless routers are "protected computers" pursuant to Sections 1030(e)(1) and 1030(e)(2)(B)); ¶ 71 ("Comcast never obtained authorization from Plaintiffs or Class members to . . . cause Plaintiffs' and Class members' wireless routers—protected computers pursuant to 18 U.S.C. § 1030(e)(2)(B)—to

broadcast Xfinity Wi-Fi Hotspots."); ¶¶ 72–73 (same); ¶ 77 ("Comcast's acts, complained of herein, are "access" as defined in CAL. PENAL CODE § 502(b)(1)."); ¶ 81 (stating that, in violation of the Comprehensive Computer Data Access and Fraud Act, CAL. PENAL CODE § 502 ("CCDAFA"), "Comcast acted without authorization from Plaintiffs . . . circumventing technical and code-based barriers on Plaintiffs' and Class members' wireless routers . . . ."); ¶ 85 (claiming that "Comcast's conduct—the unauthorized access of Plaintiffs' . . . wireless routers . . . constitutes 'unlawful' business acts or practices [pursuant to the Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq.*] by virtue of Comcast's violation of the [CFAA].").

That conclusion also follows from the statutes that Plaintiffs have invoked as the legal grounds for their claims. Under the CFAA, "exceeds authorized access" means "***to access a computer with authorization*** and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *See* 18 U.S.C. § 1030(e)(6); *United States v. Nosal*, 676 F.3d 854, 865 (9th Cir. 2012); *see also* Compl. ¶ 66 (alleging same). Similarly, under CCDAFA, prohibited authorization requires access to a computer, computer system, or computer network. CAL. PENAL CODE § 502(b). It defies Plaintiffs' own pleading, and the facts and legal claims that they have alleged therein, to suggest that their claims are for anything other than unauthorized use of equipment.

***Third***, the distinction between "XFINITY Equipment" and "Service" is critical because the RSA defines them differently and limits the exclusion to the unauthorized "USE" and "RECEIPT" of "SERVICE." As Plaintiffs acknowledge, the RSA contains a specific definition of "XFINITY Equipment" that encompasses the wireless router at their residence. *See* Compl., Ex. A at 5, § 6(a) ("'XFINITY Equipment' means any equipment provided by Comcast such as gateways, routers, cable modems, voice-capable modems, wireless gateway/routers, CableCARDs, converters, digital adapters, remote controls, and any other equipment provided or leased to you by us or our agents, excluding equipment purchased by you from Comcast and Customer Equipment."); *see also id.* ("XFINITY Equipment also includes any software, firmware, or other programs contained within Customer Equipment or XFINITY Equipment."). Plaintiffs' leased wireless routers plainly fall within the definition of "XFINITY Equipment," not

"SERVICE," and their claims of unauthorized use of the XFINITY Equipment are not encompassed within the exclusion they invoke. Indeed, to conclude otherwise would require the Court to rewrite the exclusion to include a reference to "UNAUTHORIZED USE OF XFINITY EQUIPMENT"—an approach that the FAA prohibits.

To argue otherwise, Plaintiffs have no choice but to turn the parties' relationship on its head and suggest that **Plaintiffs** are providing service and **Comcast** is using it. Pls.' Opp. at 3, 5 (challenging whether Comcast or other subscribers "have authorization to use Plaintiffs' internet services."). Their suggestion is belied not only by common sense, but also by no less than a dozen other provisions in the RSA that speak in terms of provision by Comcast and receipt by subscribers—starting with the very definition of the term "Service" itself.[2] Adopting Plaintiffs' position would create an absurdity by reading the exclusion without reference to or context from anything else in the agreement. That would be improper, under both the FAA's presumption in favor of arbitration and state law canons of construction. *See, e.g.*, *Rambus Inc. v. Hynix*

---

[2] *See, e.g.*, Compl., Ex. A at 1 ("ABOUT THIS AGREEMENT, OUR SERVICES, AND YOUR RIGHTS"); *id.* ("Service(s) may include, but are not limited to, XFINITY TV cable television service ('XFINITY Video'), XFINITY Internet service including XFINITY WiFi ('XFINITY Internet'), and XFINITY Voice or Unlimited Select and Local Select service (herein collectively 'XFINITY Voice' WITH LIMITED EXCEPTIONS FOR UNLIMITED SELECT AND LOCAL SELECT AS OTHERWISE INDICATED BELOW) (each a 'Service' and collectively the 'Services')."); *id.* ("XFINITY Service(s) will be provided to you . . . on the terms and conditions set forth in this Agreement for Residential Services") (emphasis added); *id.* at 6, § 6(b)(1) ("You agree by using the Service(s). . . ."); *id.* at 7, § 6(b)(3) ("If you make or assist any person to make any unauthorized connection or modification to XFINITY Equipment or the Service(s) or any other part of our cable network, we may terminate your Service(s) and recover such damages as may result from your actions."); *id.* ("You agree that it would be difficult, if not impossible, to calculate precisely the lost revenue resulting from your receipt of unauthorized Service(s)"); *id.* at 8, § 7 ("You agree that the Service(s) and the XFINITY Equipment will be used only for personal, residential, non-commercial purposes, unless otherwise specifically authorized by us in writing."); *id.* ("You will not use the XFINITY Equipment at any time at an address other than the Premises without our prior written authorization..."); *id.* ("Use of the XFINITY Equipment or Service(s) for transmission, communications or storage of any information, data or material in violation of any U.S. federal, state or local regulation or law is prohibited"); *id.* ("You agree to indemnify, defend and hold harmless Comcast . . . against all claims and expenses . . . arising out of the use of the Service(s) [and/or] the XFINITY Equipment . . . or the breach of this Agreement or any of the applicable Comcast policies by you or any other user of the Service(s) at the Premises."); *id.* at 9, § 7 (For XFINITY Internet Customers . . . YOU AND OTHER USERS OF THE SERVICE(S) SHOULD CONSULT . . . ALL POSTED POLICIES REGULARLY . . ."); *id.* § 8 (This Agreement and the Service(s) furnished hereunder may not be assigned by you."); *id.* at 18, § 14 ("Comcast will provide you with a copy of our customer privacy notice at the time we enter into an agreement to provide any Service(s) to you . . . ."); *id.* § 16 ("[I]f you continue to receive the Service(s) after the change . . . .").

1  *Semiconductor Inc.*, Nos. C-05-00334 RMW, C-05-02298 RMW, 2008 WL 2795135, at *3 (N.D.
2  Cal. July 15, 2008) ("[C]ourts must interpret contracts as a whole to give force and effect to every
3  provision, each helping to interpret another.") (citing CAL. CIV. CODE § 1641).[3]

4        Similarly, the commonsense notion that Comcast does not "USE" what it provides is
5  confirmed by the fact that "USE" is paired with "RECEIPT." Under the doctrine of *noscitur a*
6  *sociis* ("it is known by the company it keeps"), words in an agreement should interpreted by
7  reference to other words that are associated with or surrounding the disputed term. *See* 5
8  Margaret N. Kniffin, *Corbin on Contracts* § 24.28 (rev. ed. 1998). As the Supreme Court has
9  explained, this doctrine is "wisely applied where a word is capable of many meanings in order to
10 avoid the giving of unintended breadth" to contract provisions. *Jarecki v. G.D. Searle & Co.*, 367
11 U.S. 303, 307 (1961); *see also Napier v. Preslicka*, 331 F.3d 1189, 1193 (11th Cir. 2003).

12       Here, because the word "RECEIPT" clearly refers to a subscriber's conduct, the word
13 "USE" should be read similarly. That is consistent with both the remainder of the RSA, as well
14 as with the federal statute that imposes both criminal and civil liability for the unauthorized use of
15 cable service. *See* 47 U.S.C. § 553 (providing that unauthorized reception of cable service may
16 result in fines or imprisonment, and providing a private right of action for, *inter alia*, injunctive
17 relief).[4]

18       Finally, adopting Plaintiffs' interpretation would allow the exception to swallow the rule,
19 as any subscriber could argue that Comcast has put its service to some allegedly improper "USE."

---

[3] Plaintiffs claim that the Motion contains various and sundry "admissions" about the nature of Plaintiffs' claim. *See* Pls.' Opp. at 3. On the contrary, Comcast repeatedly characterized this case as arising out of the allegedly unauthorized use of "XFINITY Equipment." *See* Def.'s Mot. at 1 ("Plaintiffs claim that when they leased Comcast equipment . . . they did not authorize for that equipment to be used to provide Comcast service to others through an "Xfinity Internet Wi-Fi Hotspot"); *id.* at 4 ("Plaintiffs' statutory claims challenge the terms of the RSA, including the specific provision therein that users of Comcast service 'authorize' the use of Comcast equipment 'to provide the Service(s) to you and others,' including with specific reference to "the Xfinity Internet WiFi Home Hotspot"); *id.* at 12–13 ("Plaintiffs' claims all relate to their services from Comcast and are, as set forth above, founded on Comcast's purported failure to obtain customer authorization or permission to broadcast an HHS because of inadequate disclosures in the RSA.").

[4] The exclusion thus allows for enforcement of rights under 47 U.S.C. Section 553 in coordinated federal civil and criminal proceedings, rather than piecemeal adjudication of these issues in federal criminal proceedings and parallel arbitration proceedings.

1   This exception squarely focuses on what customers do with what they receive, not how Comcast
2   provides it.  A contrary reading would render the arbitration agreement meaningless, effectively
3   "interpreting" it out of existence.  That too would be improper.  *See, e.g.*, *Riffe Assoc., Inc. v.*
4   *Datron Sys., Inc.*, 425 F. Supp. 31, 37 (C.D. Cal. 1977) (finding that courts must interpret
5   contracts as to make them "lawful, operative, definite, reasonable, and capable of being carried
6   into effect"); *see also Minnesota Life Ins. Co. v. Philpot*, No. 11-0812 BTM (POR), 2013 WL
7   100947, at *2 (S.D. Cal. Jan. 7, 2013) (same).

8   In short, Plaintiffs offer no evidence, let alone the "most forceful evidence," of any intent
9   to exclude their claims from arbitration.  On the contrary, they offer only a nonsensical reading
10  that defies both the letter and the spirit of their agreement and that cannot be reconciled with the
11  strong federal policy in favor of arbitration.  It follows that this dispute is arbitrable, and
12  Comcast's Motion should be granted.

### III.
### CONCLUSION

For the reasons stated above and in Comcast's Motion, Comcast respectfully requests that the Court stay this action in its entirety and allow Plaintiffs to pursue their individual claims in arbitration pursuant to the terms of their written arbitration agreements.

Dated:  February 27, 2015                DRINKER BIDDLE & REATH LLP

By: */s/ Michael J. Stortz*
    Michael J. Stortz
    Tracy S. Combs

Attorneys for Defendant
COMCAST CORPORATION